IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JUAN BOOKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 11-732 |
| THE CITY OF CHICAGO, CHICAGO | ) | |
| POLICE OFFICERS WILLIAM BROGAN, | ) | |
| T. VOVOS, J. MURRAY, and W. MARLEY | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, Juan Booker, by his attorneys, LOEVY & LOEVY, and complains of Defendants, City of Chicago and Chicago Police Officers William Brogan (Star No. 20319), T. Vovos (Star No. 20308), J. Murray (Star No. 21128), and W. Marley (Star No. 20182) (collectively, the "Defendant Officers"), and states as follows:

### Introduction

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2.      Plaintiff Juan Booker spent almost four years in Cook County Jail awaiting trial for a crime he did not commit. He was arrested, indicted, prosecuted and jailed because Defendants fabricated false evidence implicating Mr. Booker in a murder, and withheld authentic exculpatory evidence.

3.     Although Mr. Booker was acquitted at trial, he cannot regain the four years of his life lost to wrongful prosecution and imprisonment. This lawsuit seeks redress for those injuries.

## Jurisdiction and Venue

4.     This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

5.     Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## The Parties

6.     Plaintiff Juan Booker was at all relevant times a citizen of the United States and a resident of Cook County, Illinois.

7.     Defendant City of Chicago is an Illinois municipal corporation, and is and/or was the employer of each of the Chicago Police Department Defendant Officers.  The City of Chicago is responsible for the acts of the Defendant Officers while employed by the City of Chicago and while acting within the scope of their employment.

8.     William Brogan, T. Vovos, J. Murray, and W. Marley at all relevant times were Chicago Police Officers acting under color of law and within the scope of their employment for the City of Chicago.

## Factual Allegations

9.     Early in the morning of May 10, 2006, Sylvester McClinton and Antoine Berry were sitting in a parked Buick Regal in the 2600 block of West 69th

Street, also known as Lithuanian Plaza, Chicago, when Lavoia Hardy, Mr. Berry's cousin, approached the car to talk.

10.     A fight ensued, which soon became a melee involving Mr. McClinton, Mr. Berry, Mr. Hardy, Bruce Garrett, and several other young men.

11.     During the course of the fight, someone shot Mr. McClinton at close range with a shotgun, killing him.

12.     Chicago Police arrived on the scene shortly after the shooting, and began collecting evidence, including physical evidence and witness statements. None of that evidence implicated Juan Booker in the murder, or even indicated that Mr. Booker had been present on the scene at any time during the preceding fight.

13.     Nonetheless, Defendant Officers, who were among those assigned to investigate the McClinton murder, determined and agreed to falsely implicate Juan Booker, and build a false case against him, with the aim of securing his false arrest, conviction, and imprisonment.

14.     They did so, at least in part, because Plaintiff Juan Booker is the younger brother of Crispus Booker, who had filed a lawsuit against several Chicago police officers alleging excessive force. The Defendant Officers acted, at least in part, to retaliate against Juan Booker and the Booker family for the filing and prosecution of the lawsuit, to prevent Juan Booker from appearing as a witness in or otherwise supporting his brother's lawsuit, and to penalize Juan Booker for his familial relationship to Crispus Booker.

15.     Sometimes acting alone, and sometimes acting in concert, the Defendant Officers manipulated witnesses, coached witnesses, threatened or coerced witnesses, and otherwise induced witnesses, with the result that several witnesses made false statements about Mr. McClinton's murder and the events leading up to it, and made false identifications of Juan Booker as a participant in the melee, and as the murderer. These falsified statements and identifications were the only evidence linking Mr. Booker to the murder of Mr. McClinton.

16.     Sometimes acting alone, and sometimes acting in concert, the Defendant Officers provided these false statements and false identifications to prosecutors in the Cook County State's Attorney's office, who relied on them in charging and prosecuting Plaintiff.

17.     Sometimes acting alone, and sometimes acting in concert, Defendant Officers concealed from prosecutors, Plaintiff, and Plaintiff's defense counsel both the falsity of these statements and identifications and the unlawful methods by which they procured and fabricated these false statements and identifications.

18.     As a direct result of Defendant Officers' misconduct, Juan Booker was subject to indictment and prosecution on charges of First Degree Murder and Aggravated Unlawful Use of a Weapon.

19.     As a direct result of Defendant Officers' misconduct, Juan Booker was falsely arrested on December 28, 2006, without probable cause, and falsely detained and imprisoned, without probable cause, until October 2010, when he was acquitted of all charges, and released from Cook County Jail.

20.     As a direct result of the Defendant Officers' misconduct, Juan Booker suffered injuries, including but not limited to loss of liberty, loss of wages, and emotional trauma. Mr. Booker's injuries were of the sort that did deter him from testifying at trial in support of his brother Crispus, and would likely deter any future First Amendment activity.

21.     Defendant Officers actively concealed their misconduct, and thus actively concealed from Plaintiff the fact that he had suffered constitutional and other injuries, and the fact that Defendant Officers had inflicted those injuries.

22.     The Defendant Officers' misconduct was objectively unreasonable and was undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

23.     The Defendant Officers were at all relevant times acting under color of state law, and within the scope of their employment by the City of Chicago.

24.     The Defendant Officers' misconduct was undertaken pursuant to the policy and practice of the Chicago Police Department and the City of Chicago to pursue wrongful convictions by conducting profoundly flawed investigations, by withholding exculpatory information bearing on the crime at issue, and by fabricating inculpatory evidence.  In this way, the City of Chicago violated Juan Booker's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

25.     The Defendant Officers' misconduct was undertaken pursuant to the policy and practice of the Chicago Police Department and the City of Chicago to

ignore or discredit complaints of police misconduct, and to justify acts of police

misconduct, by fabricating false evidence against citizens who have been the victims

of police misconduct, by withholding exculpatory evidence, and by subjecting

citizens who have been the victims of police misconduct to false and malicious

prosecution. In this way, the City of Chicago violated Juan Booker's rights by

maintaining policies and practices that were the moving force driving the foregoing

constitutional violations.

26.     These widespread practices, so well-settled as to constitute *de facto*

policy in the Chicago Police Department, were able to exist and thrive because

municipal policymakers with authority over the same exhibited deliberate

indifference to the problem, thereby effectively ratifying it.

27.     The widespread practices described in the preceding paragraphs were

allowed to flourish because the Defendant City of Chicago declined to implement

sufficient training and/or any legitimate mechanism for oversight or punishment.

As a matter of both policy and practice, the City facilitates the very type of

misconduct at issue here by failing to adequately punish and discipline prior

instances of similar misconduct, thereby leading Chicago Police Officers to believe

their actions will never be scrutinized, and in that way, directly encouraging future

abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused

of violating a person's rights can be confident that the Office of Professional

Standards ("OPS"), now known as the Independent Police Review Authority

("IPRA"), will not investigate those accusations in earnest and will refuse to recommend discipline even where the Officer has violated a person's rights.

## Legal Claims

28.     In the manner described above, the Defendant Officers violated Plaintiff Juan Booker's constitutional rights. The Defendant Officers violated, among others, Mr. Booker's rights under the First and Fourteenth Amendments. The Defendant Officers' misconduct, described herein, also violated Illinois law.

29.     The Defendant Officers unlawfully withheld materially favorable evidence from Plaintiff Juan Booker, from prosecutors, from the Grand Jury, and from the Court and instead provided Plaintiff, prosecutors, the Grand Jury, and the Court with falsified inculpatory evidence, in violation of the United States Constitution and Illinois law.

30.     Plaintiff Juan Booker was prosecuted, indicted, and detained because the Defendant Officers withheld material, exculpatory evidence, and instead provided falsified inculpatory evidence.

31.     The Defendant Officers maliciously subjected Plaintiff Juan Booker to judicial proceedings for which there was no probable cause by knowingly providing falsified inculpatory evidence to prosecutors with the intention of exerting influence to ensure that Mr. Booker was prosecuted for a crime of which he was innocent.  All such proceedings were terminated in Mr. Booker's favor in a manner indicative of innocence.

32.     The Defendant Officers' actions were taken, at least in part, in retaliation for Crispus Booker's protected First Amendment activity. The Defendant

Officers' actions were designed to discourage the protected First Amendment activity of Plaintiff Juan Booker, and to penalize Juan Booker for his familial relationship to Crispus Booker.

33.     One or more of the Defendant Officers failed to intervene to prevent harm to Plaintiff Juan Booker from the numerous unlawful acts committed by their fellow Defendant Officers, in violation of the United States Constitution.

34.     Plaintiff Juan Booker's injuries were proximately caused by the Defendant City of Chicago's policy, practice, and custom of failing to train, supervise, discipline and control its police officers. Defendant Officers' misconduct was undertaken pursuant to the policy, practice, and custom of the Chicago Police Department in that:

> a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

> b. As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Mr. Booker;

c.  Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Mr. Booker on a frequent basis, yet the Chicago Police Department and IPRA make findings of wrongdoing in a disproportionately small number of cases;

d.  City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so; and

e.  The City of Chicago has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

f.  As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of police misconduct, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career;

g.  The problem with the policy identified in the preceding paragraphs is that by its own accounting, the City sustains fewer than 5% of the complaints brought against police officers for violations of civil rights.

35.     The Defendant Officers' actions were extreme and outrageous, undertaken with the intent to inflict severe emotional distress or with knowledge that there was a high probability that their conduct would inflict such distress, and Plaintiff Juan Booker suffered severe emotional distress as a result of Defendant Officers' misconduct.

36.     The Defendant Officers entered into an agreement amongst themselves to deprive Plaintiff Juan Booker of his constitutional rights and to participate in an unlawful act against, or to act in an unlawful manner toward, Mr. Booker, including by conspiring to unlawfully seize and detain him, conspiring to subject him to prosecution without probable cause, conspiring to withhold materially favorable evidence, conspiring to provide falsified inculpatory evidence, and conspiring to inflict emotional distress upon him.

37.     All of the Defendant Officers' actions were undertaken under color of law and within the scope of their employment such that their employer, the Defendant City of Chicago, is liable for their actions.

38.     Illinois law provides that Defendant City of Chicago must indemnify the Defendant Officers for any liability arising out of the scope of their employment activities. Accordingly, the City of Chicago must pay any tort judgment awarded to Plaintiff to compensate them for damages resulting from the Defendant Officers' actions.

WHEREFORE Plaintiff Juan Booker respectfully requests that this Court enter judgment in his favor and against Defendants City of Chicago, William

Brogan, T. Vovos, J. Murray, and W. Marley, awarding compensatory damages and attorneys' fees, along with punitive damages against Officers Brogan, Vovos, Murray, and Marley in their individual capacities, as well as any other relief this Court deems just and appropriate.

RESPECTFULLY SUBMITTED,

/s/ Pier Petersen
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
Pier Petersen
LOEVY & LOEVY
312 North May
Suite 100
Chicago, IL 60607
(312) 243-5900