

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN BOOKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11 C 732 |
| v. ) | |
| ) | Honorable William J. Hibbler |
| THE CITY OF CHICAGO, ) | |
| CHICAGO POLICE OFFICERS ) | |
| WILLIAM BROGAN, T. VOVOS, ) | |
| J. MURRAY, and W. MARLEY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Juan Booker brings this action, pursuant to 42 U.S.C. § 1983, against the City of Chicago and several police officers. Booker alleges that Defendants arrested, indicted, and prosecuted him for a 2006 murder on the basis of false evidence. Booker's Complaint includes federal claims for a *Brady* due processes violation, First Amendment retaliation, false arrest, and false imprisonment. It also includes state law claims for malicious prosecution, intentional infliction of emotional distress, and conspiracy. Defendants move to dismiss all of Booker's federal claims and some of his state claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court denies the Motion to Dismiss in its entirety.

## I. Factual Background

The following facts are contained in Mr. Booker's complaint and are assumed to be true for purposes of the Motion to Dismiss.

On May 10, 2006, Sylvester McClinton was shot during an altercation on the 2600 block of West 69th Street. Chicago Police officers arrived on the scene shortly after

1

the shooting and began collecting evidence, including physical evidence and witness statements. None of the evidence indicated that Juan Booker was present during the shooting or otherwise involved in the crime.

Nonetheless, the investigative officers decided to falsely accuse Juan Booker of the murder and to fabricate evidence against him. They did so, at least in part, because Juan Booker's older brother, Crispus Booker, had previously filed an excessive force lawsuit against several Chicago police officers. The officers investigating the McClinton murder framed Juan Booker to retaliate against the Booker family for Crispus's lawsuit and also to prevent Juan Booker from testifying at his brother's trial. In an effort to frame Juan Booker, Defendant Officers manipulated or coerced witnesses, with the result that several witnesses made statements incriminating him.

Following his arrest on December 28, 2006, Juan Booker spent almost four years in the Cook County Jail. He was acquitted of all charges in October 2010.

## II. Standard of Review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "provide the grounds of his entitlement to relief" by alleging sufficient facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, brackets, and citation omitted). Although particularized "fact pleading" is unnecessary, the allegations in the complaint must provide enough information for the defendant to have "fair notice" of the claim and the "grounds upon which it rests." *Id.* The Court treats well-pleaded

allegations as true and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd.*, 522 F.3d 796, 799 (7th Cir. 2008).

## III. *Brady* Claim

Defendants argue that Booker's *Brady*-type due process claim should be dismissed because (1) Booker cannot establish prejudice since he was acquitted, and (2) Defendant Officers' alleged attempt to frame Booker is not the type of conduct that can give rise to a *Brady* claim.

In *Brady v. Maryland*, the Supreme Court held that criminal defendants are constitutionally entitled to prosecutorial disclosure of evidence that exculpates them from criminal charges. 373 U.S. 83, 87 (1963) ("the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment"). To establish a due process claim under *Brady*, a plaintiff must show that (1) the evidence at issue is favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice has ensued. *Parish v. City of Chicago*, 594 F.3d 551 (7th Cir. 2009).

Although commonly understood to impose a duty of prosecutors, *Brady* also applies to law enforcement officers. *See Youngblood v. West Virginia*, 547 U.S. 867, 80 (2006). When the government fails to turn over evidence that is known only to police investigators and not to the prosecutor, a *Brady* violation occurs. *Id.*

Defendants first argue that the Complaint fails to state a *Brady*-type due process claim because Booker's trial resulted in an acquittal, and a person who was acquitted at

3

trial cannot plead the requisite prejudice. Although the Seventh Circuit has not yet held that an acquitted plaintiff established prejudice for purposes of a *Brady* claim, it has clearly recognized that a future plaintiff could do so by alleging that "the decision to go to trial would have been altered by the desired disclosure." *Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010) (affirming summary judgment for defendants where undisclosed evidence would not have altered prosecution's decision to go to trial); *Bielanski v. County of Kane*, 550 F.3d 632, 644 (7th Cir. 2008); *Carvajal*, 542 F.3d at 570. Recent district decisions have also expressly recognized the viability of an acquitted plaintiff's *Brady*-type due process claim. *Craig v. City of Chicago*, No. 08 C 2275, 2011 WL 1196803, at *13 (N.D. Ill. Mar. 25, 2011); *Pope v. City of Chicago*, No. 08 C 4715, 2009 WL 811625, at *3 (N.D. Ill. March 24, 2009); *Thomas v. City of Chicago*, No. 07 CV 4969, 2009 WL 1444439, at *5 (N.D. Ill. May 21, 2009).

Booker alleges that he was subject to indictment and prosecution as a direct result of Defendants Officers' improper manipulation of witnesses. Thus, the Court may reasonably infer that disclosure of that manipulation would have altered the prosecutor's decision to go to trial. The Complaint is sufficient to plead prejudice.

Defendants next argue that Booker's due process claim should be dismissed because an officer's decision to manipulate evidence they present to the state's attorney cannot provide a basis for a *Brady* claim. It is important to note, however, that the cases Defendants cite in support of that contention relate to a different type of evidence manipulation. In those cases, the defendant officers manipulated evidence in a way that was *known* to the arrestee. *Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2010); *Craig v. City of Chicago*, No. 08 C 2275, 2011 WL 1196803 (N.D. Ill. Mar. 25, 2011). Because the

4

arrestees were aware of the manipulations and fully capable of challenging the false evidence in court, the fact that the officers manipulated evidence could not be said to be "suppressed," as *Brady* requires. For example, in *Harris*, the arrestee alleged that the police lied about who his associates were. Since Harris knew exactly who he did and did not associate with, he was able to recognize the police deception as soon as the false evidence was presented, and was thus able to challenge it. Similarly, in *Craig*, the plaintiff alleged that officers lied about (1) Craig's relationship to the driver of a car used to commit a crime, and (2) Craig's appearance in a surveillance video. Because Craig knew that he was not related to the driver and could not have appeared in the video, he was also in a position to challenge that evidence.

In contrast, Booker alleges that the Defendants manipulated witnesses in a manner that was *unknown* to him, specifically that Defendant Officers "coached," "threatened," "coerced," or "otherwise induced" witnesses who made false statements implicating Booker in the crime. Although Booker had reason to believe the witnesses were lying, he had no reason to believe that Defendant Officers were behind those lies. Because Booker lacked direct knowledge of the manipulation, his complaint meets the "suppression" requirement.

Defendant Officer's alleged conduct is also sufficient to state a due process claim because *Brady* has been held to encompass situations in which police officers manipulate witness identifications or statements, and deliberately withhold that manipulation from prosecutors. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir, 2000). In *Giglio*, the Supreme Court held that any "promise, reward or inducement" to a government witness in a criminal case must be disclosed to

the defendant prior to trial in order to enable counsel to cross-examine the witness to establish bias. Also, in *Newsome*, the Seventh Circuit held that information about officer coaching of witnesses and the fact that witnesses previously identified someone other than the defendant was covered by *Brady*.

In this case, Booker alleges that Defendant Officers "manipulated witnesses, coached witnesses, threatened or coerced witnesses, and otherwise induced witnesses" and provided those false statements and false identifications to prosecutors. Those allegations are sufficient under *Giglio* and *Newsome* to state a claim for a *Brady*-type due process violation.

## IV. Statutes of Limitation

Defendants next argue that many of Booker's claims should be dismissed for failure to state a claim because they were not timely filed. It is unusual to dismiss a claim as time-barred under Rule 12(b)(6), because the statute of limitations is an affirmative defense that a complaint need not anticipate. *Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir. 2006). Dismissal is only appropriate if the plaintiff effectively pleads himself out of court by including facts in his complaint that make clear that the applicable statute of limitations period has passed. *Id.* Conversely, if the plaintiff's complaint includes any set of facts that would establish a defense to the statute of limitations, dismissal under 12(b)(6) is inappropriate. *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003).

### A. False Arrest and False Imprisonment

Defendants first argue that Booker's claims for false arrest and false imprisonment should be dismissed as untimely.

In determining the appropriate statute of limitations for a Section 1983 claim, Federal courts look to the law of the state in which the cause of action arose, and then adopt whatever limitation the state law provides for personal injury torts. *Wilson v. Garcia,* 471 U.S. 261, 277 (1985). In this case, the parties agree that Booker's false arrest and false imprisonment claims are subject to Illinois's two-year statute of limitations. The parties disagree, however, on when that limitations period began to run. Defendants argue the limitations period began to accrue on December 31, 2006 when Booker appeared before a Judge at his probable cause hearing; Plaintiff argues the limitations period began to accrue only after he became aware of the constitutional violation, that is when he first learned that Defendant Officers manipulated evidence in an effort to frame him.

As a general rule, Section 1983 claims for false arrest or false imprisonment accrue when the alleged false imprisonment ends. *Wallace v. Kato,* 549 U.S. 384, 399 (2007). Because false imprisonment is a detention without legal process, a false imprisonment "ends" not only if the prisoner is released, but also if his detention becomes subject to a legal process: for example, if he is bound over by a magistrate or arraigned on charges. Following that point, any continued unlawful detention becomes ground for "the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Id.* at 390 (quoting Prosser & Keeton on Law of Torts §119 (W. Page Keeton et al. eds., 5th ed. 1984)).

An exception is brought into play, however, by the "discovery rule" of federal common law. The discovery rule instructs that accrual starts when plaintiff discovers he

has been injured, unless there is some directive from Congress to the contrary. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). For example in *Johnson v. Garza*, Willie Johnson brought a Section 1983 action against the City of Chicago and eleven of its police officers alleging, among other things, that the officers obtained a search warrant by presenting false information to the magistrate judge. 564 F. Supp. 2d 845, 852 (N.D. Ill. 2008). The officers argued that Johnson's claim was barred by the statute of limitations because more than two years had passed between the time of the search and the filing of the suit. The District Court ultimately held, under the federal discovery rule, that Johnson's unlawful search claim did not accrue on the date of the search, but rather when he discovered the warrant used to execute that search was obtained through the officers' false statements.

In this case, Booker's detention became subject to a legal process on December 31, 2006 when he appeared before a Judge at his probable cause hearing. Booker argues, however, that he was unaware of the nature of his constitutional injury at that time. Although he knew he had not murdered anyone, he had no reason to suspect that Defendant Officers were working to frame him, in part because Defendant Officers actively concealed their misconduct. Booker argues, under the discovery rule of federal common law, that his claim should toll, not when his detention became subject to a legal process, but when he discovered that Defendant officers were working to frame him.

The Court agrees that the discovery rule under federal common law mandates that the limitations period commence when Booker discovered the nature of his constitutional injury, rather than on the date he was arraigned. Because the Complaint does not allege when Booker discovered he was being framed, the Court is without sufficient information

to determine whether the limitations period expired before the filing of this law suit. Thus, the Court will deny Defendants' motion to dismiss Booker's false arrest and false imprisonment claims as untimely, but will reconsider the issue if Defendants can demonstrate through later discovery that Booker learned of the constitutional injury more than two years before filing his suit.

## B. First Amendment Retaliation

Defendants also argue that Booker's First Amendment retaliation claim should be dismissed as untimely. Again, the parties disagree over when the relevant limitations period began to run.

First Amendment retaliation claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Defendants argue that Booker should have known that his First Amendment rights had been violated at the time of his arrest: "If, as plaintiff says, he was arrested and prosecuted because of his relationship with Crispus [the brother], Plaintiff knew or should have known that his right of association had been violated at the time of his arrest...." (Doc. 21 at 11.) In response, Booker again argues that he had no reason to suspect the nature of his constitutional injury at the time of his arrest.

The Court declines to find that Booker knew or should have known that his First Amendment rights were being violated at the time of his arrest. When an innocent person is arrested for a crime he did not commit, he might reasonably assume that his arrest was based on inaccurate information or mistaken identifications. In this case, the fact that Booker's brother had sued certain Chicago Police officers does not foreclose the possibility that he viewed his arrest as the product of innocent error, rather than as

9

retribution. Thus, the Court declines to find that that Booker's First Amendment retaliation claim is time-barred, and Defendants' Motion to Dismiss on that basis is denied.

### C. State Law Claim for Intentional Infliction of Emotional Distress

Defendants next argue that Booker's state law claim for intentional infliction of emotional distress is time-barred because Booker "should have known" of Defendants' allegedly tortuous conduct on the date of his arrest. Defendants ignore, however, that intentional infliction of emotional distress is a continuing tort, and claims for intentional infliction of emotional distress do not accrue until "the last injurious act occurs of the conduct is abated." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 89 (Ill. 2003). An intentional infliction of emotional distress claim based on malicious prosecution does not accrue until termination of the criminal proceedings. *Parish v. City of Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010). In this case, Booker alleges that Defendants intentionally or recklessly caused him emotional distress by prosecuting him for a crime he did not commit. Booker also alleges that the criminal proceedings against him terminated in October 2010. Because Booker filed suit less than a year after his acquittal, his intentional infliction of emotional distress claim is timely.

### V. Remaining claims

Booker's state law conspiracy claim is timely because the claims underlying it are timely. *Gordon v. Devine*, 2008 WL 4594354. Also, because Booker's constitutional claims survive, his *Monell* and failure to intervene claims also survive.

## CONCLUSION

For the above reasons, the Court DENIES Defendants' Motion to Dismiss in its entirety.

IT IS SO ORDERED.

12/6/11
Dated

Hon. William J. Hibbler
United States District Court